United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 26, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 06-60223

———————————————

CALVIN HAMPTON,

Plaintiff-Appellee,

versus

OKTIBBEHA COUNTY SHERIFF DEPARTMENT, ET AL.

Defendants,

DOLPH BRYAN, Sheriff, in his capacity of sheriff and individually;

JAMES LINDSEY, Sheriff Department Supervisor, in his capacity of supervisor and individually;

SAMUEL GITCHELL, Deputy, in his capacity of deputy and individually;

TOMMY WHITFIELD, Deputy, in his capacity of deputy and individually;

Defendants-Appellants.

————————————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
(No. 1:04-CV-259)

————————————————————————

Before REAVLEY, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Before the court is an interlocutory appeal of the district court's denial of qualified immunity

to four law enforcement officers. With respect to all defendants-appellants except for Deputy Samuel

- 1 -

Gitchell ("Gitchell"), we reverse the district court and grant qualified immunity. With respect to Gitchell, we dismiss the appeal for lack of jurisdiction. The plaintiff's motion for damages and double costs is denied.

## FACTS AND PROCEEDINGS

The plaintiff-appellee, Calvin Hampton ("Hampton"), was the director of Quad County Alternative School in Starkville, Mississippi. Gitchell entered the school with an arrest warrant for a student. Hampton asked to see the warrant and said that he would retrieve the student if he was shown the warrant. Gitchell refused, became louder, and his speech became more aggressive. Hampton did nothing physically to prevent Gitchell from entering the building or searching for the student. In fact, a member of the school's staff held open the door that led to the classrooms.

After a discussion on his police radio, Gitchell asked Hampton to go outside so that he could see the warrant. Gitchell waved the warrant in Hampton's face, and while Hampton did not touch the warrant, he could see the student's name on it. Hampton indicated that this was sufficient, and he instructed the school's staff to retrieve the student from his class and turn him over to the deputy. Prior to Gitchell departing with the student, Sheriff Department Supervisor James Lindsey ("Lindsey") and Deputy Tommy Whitfield ("Whitfield") arrived at the school and told Hampton that the Sheriff Department did not permit school personnel to see an arrest warrant for a youth. The three officers returned to the Sheriff Department and discussed the situation with Sheriff Dolph Bryan ("Bryan"). He instructed them to fill out an affidavit, obtain a warrant, and place Hampton under arrest. Gitchell then swore out an affidavit that stated that Hampton unlawfully obstructed the arrest of the student by Hampton's refusal to turn the student over to the officers, which purportedly violated MISS. CODE § 97-9-73. This section requires the offender to "obstruct or resist by force, or

violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person."

After procuring a warrant based on Gitchell's affidavit, Gitchell and Whitfield returned to the school and arrested Hampton. Hampton moved to dismiss, and a county judge initially dismissed the charges. The judge subsequently recused himself per the county prosecutor's request and set aside his dismissal of the charge. The county prosecutor requested that the same judge who had signed the student's youth arrest warrant be assigned Hampton's case, and this judge was so appointed. The judge entered against Hampton a guilty judgment for the crime of resisting arrest. Hampton appealed to the county circuit court, which directed a verdict in his favor. The circuit court noted:

> That's the only thing that I can see that this Defendant did, is a request of the officer to see the warrant. The person sought to be arrested was in his custody, in his charge, by law. No threats, no violence, no absolute refusal, no nothing, other than "Let me see the warrant." Now, the officer might have thought that he couldn't show it to him. He might have been laboring under the belief that he can't show a warrant to someone in custody of another juvenile, but the only authority the officer had is by the warrant. . . . [T]his person whom the arrestee has custody of has an absolute right to demand to see it, in my view.

The testimony of the officers showed that Hampton did nothing other than ask to view the warrant. He did not use force, violence, or threats. The four officers, Gitchell, Lindsey, Whitfield, and Bryan, all have extensive law enforcement backgrounds.

The Mississippi statute governing youth records indicates that "[e]xcept as otherwise provided in this section, records involving children shall not be disclosed, other than to necessary staff of the youth court, except pursuant to an order of the youth court." MISS. CODE § 43-21-261(1). It is undisputed that no such order existed. Instead, Hampton points to another section of the statute, which states that "[u]pon request, the parent, guardian or custodian of the child who is the subject of a youth court cause or any attorney for such parent, guardian or custodian, shall have the right to

inspect any record, report or investigation which is to be considered by the youth court at a hearing." *Id.* § 43-21-261(3). "Teachers and school administrators, it is said, act *in loco parentis* in their dealings with students . . . ." *New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985). As such, Hampton was considered the youth's custodian during the relevant time period.

Hampton's § 1983 complaint alleges that the defendants "acted under color of state law to deprive plaintiff of his constitutional right to liberty and due process when they conspired to submit false and incomplete information in order to secure a warrant for the arrest of plaintiff from a court which did not have jurisdiction, without probable cause instigating the malicious prosecution of the plaintiff."

Gitchell, Lindsey, Whitfield, and Bryan filed a motion for summary judgment on, *inter alia*, the basis of qualified immunity, and the district court denied their motion. The district court decided that "there is a factual issue as to whether [Gitchell] acted reasonably, and a factual issue exists that would defeat summary judgment." In addressing the role of the other officers in the activities forming the basis for the § 1983 action, the district court denied qualified immunity, stating that "[b]ecause of the parties['] differing versions, the Court is unable to ascertain the nature of [the other officers'] role[s]. In light of the Plaintiff's averments, the Court finds that there is a factual issue as to whether [these officers] acted reasonably, and a factual issue exists that would defeat summary judgment." The officers filed an interlocutory appeal.

## STANDARD OF REVIEW AND APPLICABLE LAW

The doctrine of qualified immunity shields a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known.

*Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). "Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997) (internal quotation omitted). To determine whether a defendant is entitled to qualified immunity, this court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. *Easter*, 467 F.3d at 462. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity. *Id*.

The first prong requires the plaintiff to allege "the deprivation of an *actual* constitutional [or statutory] right." *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002) (internal quotation omitted). The plaintiff may satisfy this prong by alleging "the claimed deprivation at a higher level of generality." *Id*. at 477–78. For the second prong, by contrast, "the right . . . alleged to have [been] violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 478 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Previous cases need not be precisely similar to the instant case; officials can be on notice that their conduct violates clearly established law in novel factual scenarios provided that the state of the law gave them "fair warning that their [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Even so, "[a] defendant's acts are held to be objectively reasonable unless *all*

reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

Defendants in § 1983 actions can immediately appeal the district court's denial of a motion for summary judgment based on qualified immunity under the collateral order doctrine "to the extent that it turns on an issue of law." *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). If the district court denied summary judgment because material issues of fact exist, this court lacks jurisdiction to review the court's determination that genuine fact issues exist. *See Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc).

This court can, however, review whether the factual dispute found by the district court is material for summary judgment purposes; that is, the court can consider the legal significance of the facts that the district court found in dispute. *Id.*; *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002). In doing so, this court takes the plaintiff's factual assertions as true and inquires as to whether those facts are sufficient to defeat the motion for summary judgment. *Kinney*, 367 F.3d at 348. This court's review of the materiality of the factual dispute and the district court's conclusions of law is de novo. *Id.* at 347–48.

When the district court's order does not clarify which facts the plaintiff might be able to prove, this court has two choices. "We can either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order." *Thompson*, 245 F.3d at 456.

**DISCUSSION**

Hampton alleges a violation of his Fourth and Fourteenth Amendment rights. The officers do not dispute that "the right to be free from false arrest was well established at the time of the Plaintiff's arrest." The officers instead argue that their actions were objectively reasonable in light of clearly established law at the time of the events.

The district court declined to grant qualified immunity to any of the officers on the basis that there were genuine issues of material fact. "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true." *Kinney*, 367 F.3d at 348. The court therefore accepts Hampton's version of the facts, namely that the officers "conspired to submit false and incomplete information in order to secure a warrant for the arrest of [Hampton]." Hampton's version states that Gitchell, on Bryan's instruction, went to the judge and provided false information to procure a warrant that led to Hampton's arrest and prosecution. More specifically, Gitchell provided the judge with false information by stating that Hampton "obstruct[ed] or resist[ed] by force, or violence, or threats, or in any other manner" the arrest of the youth.

## A.    Gitchell

A reasonable officer would know that lying to a judge in order to procure an arrest warrant was unlawful. The district court found that there was a genuine issue of fact as to whether or not Gitchell did exactly this.[1] This court cannot review such a determination of genuineness on interlocutory appeal. *Reyes v. City of Richmond*, 287 F.3d 346, 350–51 (5th Cir. 2002). Rather, this court accepts Hampton's "version of the facts as true," namely that Gitchell recklessly provided false

---

[1]Despite the parties' apparent confusion, the relevant constitutional or statutory provision that Gitchell may have violated is not the Mississippi statute governing youth warrants but rather the requirement that law enforcement officers not lie to the judge in procuring a warrant. *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005).

information in procuring the warrant. *Kinney*, 367 F.3d at 348. Accordingly, Gitchell is not entitled to qualified immunity at this stage in the litigation. We dismiss Gitchell's appeal for lack of jurisdiction. *See id.* at 351–52.

**B.     Whitfield and Lindsey**

At this stage, it is not clear what role these other officers played in the procurement of the warrant. It appears undisputed, however, that Gitchell alone actually prepared the affidavit and presented it to the judge.

Whitfield and Lindsey accordingly argue that they are entitled to qualified immunity because under *Michalik v. Hermann*, liability for procurement of a warrant is appropriate against (1) the affiant officer or (2) "an officer who actually prepares the warrant application with knowledge that a warrant would be based solely on the document prepared. Such an officer is in a position to see the whole picture, to understand his responsibility, and thus fully to assess probable cause questions." 422 F.3d 252, 261 (5th Cir. 2005) (footnote omitted).

In *Michalik*, this court, on interlocutory appeal, reversed the district court's denial of qualified immunity to two officers who were involved in the procurement process but were not the affiant or preparer of the affidavit with respect to potential liability for procurement of a warrant. *Id.* In granting the officers qualified immunity on this issue, the court noted that:

> Although issues of fact may exist as to the roles that [the two officers] played in the investigation, and in providing some of the information to [the affiant officer], these issues of fact are not material to the warrant claim because none of the evidence suggests that [the two officers] prepared or presented the warrant or were fully responsible for its preparation or presentation.

*Id.* Hampton does not allege that Whitfield or Lindsey was the affiant officer or the "officer who actually prepare[d] the warrant application with knowledge that a warrant would be based solely on

the document prepared." *Id.* Even under the plaintiff's best view of the facts, these officers are not liable as a matter of law for Gitchell's procurement of the warrant. We reverse the district court and grant qualified immunity to Whitfield and Lindsey.

**C. Bryan**

Bryan, after hearing Gitchell describe the incident at the school, instructed him to prepare an affidavit and procure an arrest warrant for Hampton. "A supervisory officer cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability." *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985) (per curiam). Hampton must therefore allege that Bryan himself actually violated Hampton's constitutional rights.

*Michalik* only extended liability to cases in which the non-affiant officer actually prepared the warrant for presentation by another. 422 F.3d at 261. Hampton does not dispute that Bryan did not himself prepare or present the warrant. We therefore reverse the district court and grant qualified immunity to Bryan.

**D. Motion for damages and double costs**

Hampton also filed a motion for damages and double costs. "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion . . . and reasonable opportunity to respond, award just damages and single or double costs to the appellee." FED. R. APP. P. 38. As this appeal was not frivolous, Hampton's motion is denied. *See C&H Nationwide, Inc. v. Norwest Bank Tex. NA*, 208 F.3d 490, 497–98 (5th Cir. 2000).

**CONCLUSION**

We DISMISS Gitchell's appeal for lack of jurisdiction and REVERSE the district court's denial of qualified immunity to Whitfield, Lindsey, and Bryan. We DENY Hampton's motion for

damages and double costs.